# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:10-CR-99-FDW-DCK

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| NATWOINE AUSTIN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on Defendant's "Motion to Dismiss Indictment" (Doc. No. 8), and the Government's Response in Opposition (Doc. No. 9). After reviewing Defendant's motion, the Court asked the U.S. Probation Office to obtain certified copies of the State of North Carolina, Mecklenburg County, conviction records pertaining to Defendant. (Doc. No. 10). Subsequently, the Court ordered the parties to provide supplemental briefings based upon these conviction records (Docs. Nos. 11 and 12).

In these supplemental pleadings, Defendant requested a hearing to provide oral argument on the pending motion. The Court, however, finds that the facts and legal contentions are adequately presented in the materials and argument would not aid the decisional process. Accordingly, the request for a hearing is DENIED.

Following careful consideration of the record and the parties' memoranda of law, Defendant's "Motion to Dismiss Indictment" is DENIED for the reasons that follow.

## I. BACKGROUND

On March 18, 2009, Defendant Natwoine Austin pled guilty to a Class I felony for Possession of a Schedule I Controlled Substance in Mecklenburg County Superior Court in the State of North Carolina. Defendant's "Transcript of Plea" document, signed by Defendant, Defendant's

counsel, the state prosecutor, and the superior court judge, states that Defendant received a four (4) to five (5) month suspended sentence and that Defendant would be placed on probation for eighteen (18) months. (Doc. No. 10, Attachment 1, "Transcript of Plea," page 9 (available only to the parties)). This "Transcript of Plea" further indicated that the maximum punishment for this offense was fifteen (15) months. Id. Subsequent to this conviction, a federal grand jury indicted Defendant for unlawful possession of a firearm by a person "convicted in any court of a crime punishable by imprisonment for a term exceeding one year" under 18 U.S.C. § 922(g)(1).

Defendant now moves to dismiss the federal indictment on the grounds that the state court could not have sentenced Defendant Austin to more than ten (10) months under North Carolina's structured sentencing. Defendant contends that, based on the Supreme Court's decisions in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010) and United States v. Rodriquez, 553 U.S. 377 (2008), his prior North Carolina conviction does not qualify him as a person convicted of a crime "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

## II. ANALYSIS

North Carolina has adopted a structured sentence system whereby each felony is assigned a certain class level. North Carolina General Statute § 15A-1340.17(c) provides a table of punishments indexed by the class level and defendant's prior record level, which a sentencing court can then use to calculate the minimum sentence for that offense. The statute actually provides three minimum sentencing ranges for the individual defendant allowing for a mitigated, presumptive, and aggravated range. N.C. Gen. Stat. § 15A-1340.17(c). After selecting the minimum sentence, § 15A-1340.17(d) provides the corresponding maximum sentence.

The Fourth Circuit in United States v. Jones examined North Carolina's structured sentencing in the context of a 18 U.S.C. § 922(g)(1) charge. 195 F.3d 205 (4th Cir. 1999). In

Jones, the defendant contended that the district court erred in holding that his prior conviction was "a crime punishable by imprisonment for a term exceeding one year," because under North Carolina's structured sentencing, the maximum sentence the *particular* defendant could receive did not exceed twelve (12) months. Id. at 206-07 (citing 18 U.S.C. § 922(g)(1)). The Fourth Circuit recognized that "Jones' theory of the meaning of section 922 accords with neither the language of section 922(g)(1) nor North Carolina judicial practice," because "[s]ection 922(g)(1) requires only that the crime be punishable by a term exceeding one year." Id. at 207. In rejecting the defendant's argument, the Fourth Circuit concluded that for purposes of § 922(g), the term "punishable" modified the crime and not the offender. Id. at 207. Thus, an offense qualified if any allowable sentence for the classification of the offense was punishable by a term of imprisonment exceeding one year. Id. ("viewing the class maximum as the statutory maximum for the crime appears to accord both with the general practice in North Carolina courts and with the understanding of the court in Jones' case in particular.")

This same rationale was adopted by the Fourth Circuit in United States v. Harp, 406 F.3d 242 (4th Cir. 2005). There, the defendant contended that based on North Carolina's structured sentencing, the facts in his case "did not provide any basis for imposition of a sentence exceeding one year." Id. at 246. Once again, the Fourth Circuit rejected the defendant's argument and concluded that "a prior North Carolina conviction was for 'a crime punishable by imprisonment for a term exceeding one year,' if any defendant charged with that crime could receive a sentence of more than one year." Id. at 246 (citing Jones, 195 F.3d at 206-07). The Fourth Circuit recognized as late as June 2010, that Jones and Harp remain binding circuit precedent. See United States v. Champion, 2010 WL 2512325, at *1 (4th Cir. June 23, 2010)(unpublished); United States v. Perry,

2010 WL 2512339, at *1 (4th Cir. June 23, 2010)(unpublished); United States v. Summers, 361 F. App'x 539, 541 (4th Cir. 2010) (unpublished).

Here, Defendant urges this Court to adopt a position, contrary to the Fourth Circuit precedent in Jones and Harp, that this *particular* Defendant could only have faced up to eight (8) and at most ten (10) months under § 15A-1340.17(c) and (d). However, a review of the North Carolina Structured Sentencing Chart for the relevant time period[1] indicates that for a Class I felony, a defendant for that *offense* could receive up to a maximum of fifteen (15) months. This fact is memorialized on Defendant's "Transcript of Plea," to which both he and his attorney signed, noting that the maximum punishment for the offense of Possession of a Schedule I Controlled Substance was fifteen (15) months. (Doc. No. 10, Attachment 1, page 9). Consistent with both Jones and Harp, Defendant's federal indictment should stand because the predicate crime was in fact punishable by a sentence of more than one year.

Despite this well-established Fourth Circuit precedent, Defendant now argues that the Supreme Court's decisions in Carachuri-Rosendo, 130 S. Ct. 2577 (2010) and Rodriquez, 553 U.S. 377 (2008) mandate a different outcome. In Carachuri-Rosendo, the Supreme Court considered whether the defendant, who had been convicted of two misdemeanor drug offenses, qualified as having been convicted of an "aggravated felony" under 8 U.S.C. § 1101(a)(43) of the Immigration and Naturalization Act. Id. at 2583.[2] The Court rejected the Government's contention that the state

---

[1] The relevant Felony Punishment Chart for offenses committed on or after December 1, 1995, but before December 1, 2009, was originally published in N.C. Gen. Stat. § 15A-1340.17, but can be found online at http://www.nccourts.org/Courts/CRS/Councils/spac/Documents/felonychart_12_01_95maxchart.pdf.

[2] The Supreme Court noted that it "granted certiorari to resolve the conflict among the Courts of Appeals over whether subsequent simple possession offenses are aggravated felonies." Carachuri-Rosendo, 130 S.Ct. at 2584. In a footnote following this sentence, the Supreme Court compares several circuit cases highlighting this circuit split, but curiously does not cite to a Fourth Circuit case. Id. at n. 9. This could be interpreted as further indication that the decision in Carachuri-Rosendo was not specifically aimed at Fourth Circuit precedent set forth in

offense could have resulted in a sentence exceeding one year if it had been prosecuted under federal law since this was the defendant's second offense. Id. at 2588-89. The Supreme Court concluded that:

> [t]he mere possibility that defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law is insufficient to satisfy the statutory command that a noncitizen be "convicted of a[n] aggravated felony" before he loses the opportunity to seek cancellation of removal.

Id. at 2589. Thus, the Court ultimately interpreted "aggravated felony" not to include the conviction of a state offense where the defendant had not actually been charged with a crime for which a recidivist penalty attached. Id.

In Rodriquez, the defendant was convicted for unlawful possession of a firearm by a convicted felon under § 922(g) and had two prior state convictions in California for residential burglary and three state convictions in Washington for delivery of a controlled substance. 553 U.S. at 380-81. The Government argued that the defendant should be sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(A)(ii), which sets a 15-year minimum sentence where a person violates § 922(g) and has three previous serious drug convictions, defined as having a maximum term of imprisonment of ten (10) years or more. Id. at 381 (citing § 924(e)(2)(A)(ii)). The Government contended that two of the defendant's prior convictions were serious drug convictions because the maximum terms that the defendant faced on at least two of the Washington drug charges were ten (10) years, and therefore, these convictions had to be counted under ACCA. Id. at 382. The Supreme Court agreed and held that the "'maximum term of imprisonment . . .

---

Jones and Harp. At the same time, this Court recognizes that Carachuri-Rosendo remanded certain Fourth Circuit decisions in United States v. Watson, 336 F. App'x 363 (4th Cir. 2009), United States v. Simmons, 340 F. App'x. 141 (4th Cir. 2009), and others in light of Carachuri-Rosendo, but the Court believes, as explained more fully below, the mere action of remanding these cases does not compel the conclusion that Jones and Harp have been overruled.

prescribed by law' for the state drug convictions at issue in this case was the 10-year maximum set by the applicable recidivist provision." Id. at 393.

Defendant contends that the Carachuri-Rosendo and Rodriquez decisions conflict with the Fourth Circuit's reasoning in Harp and Jones. Defendant goes so far as to argue that Carachuri-Rosendo "evinces a sea-change in Fourth Circuit law where a defendant's criminal history that consists of convictions and sentences under North Carolina's structured sentencing scheme must be taken into consideration when determining if prior convictions even qualify for statutory or guidelines enhancement." (Doc. No. 8, p. 4). Defendant then urges this Court to consider only Defendant's *actual* criminal sentence and not the worst possible offense punishment he could have received. The Court rejects this contention for the reasons that follow.

First, the issue presented in Carachuri-Rosendo differs from the one presented here. The statute in Carachuri-Rosendo contemplated the term "conviction," see 130 S. Ct. at 2586-87, whereas the current statute before the Court involves the word "punishable." 18 U.S.C. § 922(g). In fact, Justice Scalia, in his concurring opinion, drew this distinction, noting that "[a] defendant is not 'convicted' of sentencing factors, but only of the elements of the crime charged in the indictment." Id. at 2589.

Further, Carachuri-Rosendo addressed whether the defendant could have hypothetically been prosecuted for a felony, and not, as in the present case, what maximum sentence a defendant could have received for the crime for which he was actually prosecuted and to which he pled guilty. Id. at 2583-84. Here, the Court has reviewed Defendant's record of conviction, which explicitly states that the maximum punishment for the offense was fifteen (15) months. And the Fourth Circuit in United States v. Summers rejected the defendant's contention that the Supreme Court's decision in

Rodriquez requires "individualized analysis" and further rejected the notion that Rodriquez implicitly overrules the reasoning in Harp. See Summers, 361 F. App'x at 541.[3]

As a result, the Court is not convinced, at this time, that Carachuri-Rosendo and Rodriquez mandate a different reading of binding Fourth Circuit precedent of Jones and Harp. Moreover, the mere fact the Supreme Court remanded two cases[4] that followed Jones and Harp does not require the Court of Appeals to reach a different result:

> Supreme Court orders of this type, colloquially termed "GVRs," meaning "granted, vacated, and remanded," do not resolve a case. Rather, they tell us that we misapprehended the law when we entered the judgment now vacated, and that we must reconsider the case now remanded to us in light of the Supreme Court's opinion. Sometimes, despite the intervening precedent, we will enter the same judgment because, after due consideration, we conclude that the new precedent does not require a different outcome. See, e.g., United States v. Burnette, 423 F.3d 22 (1st Cir. 2005). Other times, the intervening precedent will result in a different outcome.

Vasquez-Valentin v. Santiago-Diaz, 459 F.3d 144, 147-48 (1st Cir. 2006) (citation omitted); see also United States v. Norman, 427 F.3d 537, 538 n. 1 (8th Cir. 2005) ("The GVR is not the equivalent of a reversal on the merits, however. Rather, the Court remands for the sake of judicial economy — so that the lower court can more fully consider the issue with the wisdom of the intervening development."). Notably, the Supreme Court has recognized the potential for the same result to occur on remand. See Stutson v. United States, 516 U.S. 193, 197-98 (1996) (issuing a GVR directing the Eleventh Circuit to reconsider that case in light of a recent decision, which it classified as "potentially relevant," and acknowledging that the Eleventh Circuit may "conclude that Pioneer

---

[3]Notably, the Fourth Circuit in Summers recognized, but declined to follow United States v. Pruitt, 545 F.3d 416 (6th Cir. 2008), a case handed down by the Sixth Circuit Court of Appeals and cited by Defendant here throughout his motion. See Summers, 361 F. App'x at 541. The Fourth Circuit also declined to follow Pruitt in Champion, 2010 WL 2512325, at *1 and Perry, 2010 WL 2512339, at *1. In light of this, the Court finds Pruitt unpersuasive and, therefore, rejects Defendant's arguments relying on that case.

[4] United States v. Watson, 336 F. App'x 363 (4th Cir. 2009); United States v. Simmons, 340 F. App'x. 141 (4th Cir. 2009).

does not apply" and thus reach the same result on remand); <u>see also</u> Robert L. Stern, et al., Supreme Court Practice 319 (8th ed. 2002) (when the Supreme Court issues a GVR, "the lower court is being told simply to reconsider the entire case in light of the intervening precedent-which may or may not compel a different result."). Therefore, although it remains possible that the Fourth Circuit (or the Supreme Court) may revisit or overrule <u>Harp</u> and <u>Jones</u>, until that happens, those cases bind this Court. Therefore, Defendant's federal indictment should not be dismissed.

### III. CONCLUSION

Given that Defendant was convicted of a crime "punishable by a term of imprisonment exceeding one year," this Court does not find grounds to dismiss the federal indictment. Accordingly, Defendant's Motion to Dismiss is hereby DENIED.

IT IS SO ORDERED.

Signed: September 30, 2010

_____
Frank D. Whitney
United States District Judge